UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08CV-354-H

DR. INDRA RASTOGI                                                                                    PLAINTIFF

V.

AMEX ASSURANCE COMPANY                                                                DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Indra Rastogi, filed a declaration of rights against AMEX Assurance Company seeking benefits for her husband, Gopal Rastogi ("Dr. Rastogi"), under the AMEX accident protection plan policy (the "Policy"). AMEX removed the complaint to federal court and has now moved to dismiss based on the allegations of the Complaint.

The unusual questions presented here are whether a mosquito bite is an "accident" as defined in the Policy and whether the mortal infection contracted from the bite constitutes a "disease" that the Policy excludes from coverage. Quite frankly, the result is one that the Court did not anticipate. However, after a thorough review and consideration, the Court concludes that the facts and law of this case do not support summary judgment in favor of AMEX.

I.

On September 1, 2006, Dr. Rastogi purchased the AMEX Policy, which was entitled an "Accident Protection Plan." The Policy provided a benefit of $100,000 to Plaintiff, Dr. Rastogi's wife, in the event that Dr. Rastogi died within 365 days of the occurrence of an "accident" that caused an "injury." The Policy defined the term, "accident" as a "sudden, unexpected, unusual, specific event which occurs at an identifiable time and place." The Policy

defined "injury" as follows:

> Injury means bodily injury: (1) which is sustained as a direct result of an unintended, unanticipated accident that is external to the body and that occurs while the injured person's coverage under the Policy is in force; (2) which occurs while such person is participating in a Covered Activity; and (3) which directly (independent of sickness, disease, mental incapacity, bodily infirmity, or any other cause) causes a covered loss.

Moreover, the Policy contained the following exclusion:

> No coverage shall be provided under the Policy and no payment shall be made for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks even if the proximate or precipitating cause of the loss is an accidental bodily injury.
>
> . . .
>
> 2. Sickness, or disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these; ....

Soon after buying the Policy, Dr. Rastogi, who was 69 years old and in apparent good health, traveled to India on a personal vacation. The Complaint says that during this time, India was experiencing a Chikungunya outbreak. Chikungunya is a blood-borne viral pathogen that is carried by insects. The Complaint says that while in India, despite his best protective efforts, Dr. Rastogi was bitten several times by mosquitos. The mosquitos that bit Dr. Rastogi were carriers of the pathogen and Dr. Rastogi contracted the disease as a direct result of the bites. The particular strain of Chikungunya Dr. Rastogi contracted was prevalent in India at that time.

While Chikungunya is not ordinarily fatal, Rastogi was infected by a particularly virulent strain. He died within nine (9) days. Subsequently, Rastogi's wife made claims on two separate accidental death claim policies, one company paid, but AMEX denied the claim.

Plaintiff submitted her claim to AMEX. The company investigated the claim and determined that Dr. Rastogi died as a result of a non-bacterial infectious disease and not accidental causes; and that the disease was exacerbated by underlying illnesses. Therefore, AMEX said, "Dr. Rastogi did not die as a result of an accident." It concluded based on the Policy's language and terms that "there was no Injury which directly and independently of sickness or disease resulted in death." This lawsuit followed.

AMEX's essential arguments are that (1) the mosquito bite is not an "accident" as the Policy defines, (2) Dr. Rastogi did not suffer an "injury" as the Policy defines it, and (3) Chikungunya is a disease and the Policy excludes coverage from death as a result of "disease." The last two arguments essentially involve the same analysis. The Court will consider each issue in turn.

II.

The Policy provides coverage for accidents, which it defines as "sudden, unexpected, unusual and specific events." In a later definition, the Policy says that the accident must be unintended and unanticipated. Regardless of our preconceptions about the definition of an "accident," the Court's analysis is guided solely by the Policy language and definitions.

Defendant argues that the mosquito bite was not unusual or unexpected because many people were infected during the epidemic and because Dr. Rastogi was very aware of the specific potential danger of the disease. Defendant's argument, however, sidesteps the central question: whether the bite itself was an accident. To this analysis, the resulting illness is immaterial to determining whether the bite constitutes an accident. To be sure, one may not ordinarily think of a mosquito bite as an "accident." Any individual infectious mosquito bite, however, could

3

certainly be described as a "sudden, unexpected, unusual and specific" event. Though one does not naturally think of a mosquito bite as an accident, it is the Policy definition that controls. Based on the definition and the allegations of the Complaint alone, a mosquito bite unambiguously meets the criteria.[1] No specific exclusion takes an insect bite out of the general definition.

Subsequent discovery could change the analysis. A danger may be so prevalent and so well known that the occurrence of it is not accidental, but rather the result of the injured party voluntarily exposing his or herself to the risk. Nevertheless, the evidence is certainly not developed enough for the Court to reach such a conclusion here with any certainty. Based upon a mere examination of the complaint, however, the Court cannot conclude as a matter of law that the mosquito bite in question was either anticipated, expected or usual. Consequently, AMEX's bid for dismissal would fall short on this ground alone.

III.

Even though the mosquito bite may well constitute an accident under the Policy definition, the Court's inquiry is far from complete. The definition of injury and the disease exclusion clauses contain potentially disqualifying language. The Policy requires that an accident cause injury "independent of sickness [or] disease." The Policy also specifically excludes coverage for death caused by "disease . . . even if the proximate or precipitating cause

---

[1] An interesting over one century old Kentucky case suggests that this Court's analysis is not a new concept. *Omberg v. United States Mut. Ass'n*, 40 S.W. 909, 910 (Ky. App. 1897). Kentucky's highest court affirmed a jury's conclusion that a mosquito bite was an accident. The policy language confined coverage to deaths resulting from "external, violent, and accidental means." *Id.* at 909. The Court of Appeals concluded that if the jury found that the patient died as a result of blood disease induced by the bite, the death would be covered by the policy. *Id.* at 910. The Court of Appeals analogized such a finding to death by a snake bite. *Id.* The holding stated that the death was the proximate result of the mosquito bite and therefore was covered by the policy's language. *Id.*

of the loss is an accidental bodily injury." These provisions raise the question whether the cause of death is inseparable from the accident or whether it is the result of a "disease" that the Policy excludes from coverage. Defendant argues that the Policy disease exclusion is specific enough to bar coverage for death arising from any "disease," regardless whether it arises directly or indirectly from an accident or whether it arises from a pre-existing condition or as an independent sequent of an accident.

A.

Citing Kentucky Court of Appeals and Sixth Circuit cases as support, Plaintiff disagrees, saying that the Policy disease exclusion can only bar coverage of a pre-existing disease. The Court will consider these cases first.

In *Penn Life Ins. Co. v. Mattingly*, 464 S.W. 2d 632, 634 (Ky. 1970), the insured fell from a combine; back surgery followed; and during the recovery process he developed disabling arthritic conditions. *Id.* His doctor did believe that Mattingly's arthritic condition pre-existed the injury, but the injury brought about the symptoms. *Id.* Mattingly's insurance company denied him coverage. The Court of Appeals concluded that "the jury had the right to find that Mattingly's disability stemmed directly and solely from the accident." *Id.* at 635. The opinion gives few details about the applicable policy provisions. The analyzed provisions do not appear similar to those here. Thus, the *Mattingly* case is of little analytic help and offers absolutely no authority.

The Sixth Circuit case is more helpful. *See Ann Arbor Trust Co. v. Can. Life Assurance Co.*, 810 F.2d 591 (6th Cir. 1986). The insured, sustained a cut from falling down his stairs. While healing, Magee experienced internal hemorrhaging that ultimately resulted in death. After

an autopsy, two physicians concluded that Magee had cirrhosis of the liver that proximately caused his death. The Defendant's policy contained a disease exclusion that precluded recovery "where death directly or indirectly results from or is contributed to by disease." Defendant argued that the exclusion barred recovery. Applying Michigan law, the Sixth Circuit held that the exclusion would definitely preclude recovery where "a pre-existing disease" or "a combination of accident and pre-existing disease" caused the death. *Id.* at 592-94. In *Ann Arbor Trust*, the evidence proved that the insured's death rose from a pre-existing condition and did not result solely from the accident. *Id.* The Sixth Circuit limited its analysis to situations involving exclusionary language and a pre-existing condition.

*Ann Arbor Trust*, thus begins to answer the question of the effect of the exclusionary language, but does not resolve it completely. The logical inference, however, which is echoed by other courts, is that the exclusionary language should not be read so literally as to preclude recovery for every death involving, in some way, an illness or disease.

The Sixth Circuit's analysis suggests that courts must read the word "pre-existing" into the exclusionary provisions in order for the policies to make sense. Thus, exclusionary language in an accidental injury plan would preclude recovery where the covered injury or death results from a combination of the accident and a pre-existing disease. However, the analysis is different where the accident directly *caused* the mortal disease. At least in those circumstances, the logical suggestion remains that a disease exclusion should not bar recovery for death resulting from a disease that arises directly from an accident.

B.

Other cases suggest that the disease exclusion can be properly limited in its application

without subverting the Policy language. Thus, the Court will limit its discussion to whether a disease directly caused by an accident is excluded.[2] The Court is not confronting the application of the exclusion to a disease that results from the accident and intervening causes.

Several older Kentucky case laws clearly hold, seemingly regardless of any disease exclusion language, that "blood poisoning resulting from accident, and an injury or death from it as an accidental injury or death." *Cont'l Cas. Co. v. Mathis*, 150 S.W. 507, 510 (Ky. 1912) (citing *Omberg*, 40 S.W. 909); *see also Prudential Ins. Co. of America v. Grant*, 10 S.W.2d 1073 (Ky. 1928) (stating that under a policy limiting recovery to death resulting "directly and independently of all other causes of bodily injury effected solely through external, violent, and accidental means," the insurance company would be liable "[i]f the accident solely and independently of all other causes resulted in pneumonia, and [the deceased] died of pneumonia so caused."). This analysis suggests that where an accident directly causes a disease, the disease should be considered part and parcel of the accident. Once again, however, these cases are not conclusive as to the proper scope of the exclusion.

The Northern District of Georgia suggests similar logic in *George Bennett Motor Express, Inc. v. SAFECO Life Ins. Co.*, 575 F. Supp. 449 (N.D. Ga. 1983). In that case, the claimant died as a result of an infection induced by an injection. *Id.* at 451. The disease

---

[2] In interpreting Ohio law, the Sixth Circuit has suggested a broad amendment of the exclusion language. *see Nieman v. Aetna Life Ins. Co.*, 83 F.2d 753 (6th Cir. 1936). The insurance policy at issue covered loss from accidents, but excluded coverage for "accident, injuries, disability, death or other loss, caused directly or indirectly, wholly or partly, by bodily or mental infirmity, ptomaines, bacterial infections, or by other kind of disease." *Id.* at 754. The Sixth Circuit held that "[i]f an accidental injury sets in motion all of the succeeding agencies which contribute to the result, then the accidental injury is the efficient producing cause of all of the succeeding agencies, and is the sole proximate cause of the disability or death." *Id.* at 755. It further noted that "[a] policy of insurance should not be so strictly construed as to thwart its general object." *Id.* (citing *Equitable Life Assur. Soc. v. Gratiot*, 14 P.2d 438 (Wyo. 1932)). The Sixth Circuit specifically stated that "the fact that disease is caused by accident, and in turn causes death or disability, does not preclude recovery even though liability for death or disability from disease is specifically excluded by the policy. *Id.* at 755.

provision excluded coverage for "loss resulting from: (g) Disease or any type of hernia" and required the injury be "caused by an accident," which "result[ed] directly and independently of all other causes." *Id.* at 452. Relying upon two state court cases, the court held that the disease exclusion did not preclude recovery for the death resulting from the infection that the injection directly induced. *Id.* at 453-54; *see Jessie Balch Horton v. The Travelers Ins. Co.*, 45 Cal. App. 462, 187 P. 1070 (Cal. App. 1920) [hereinafter *Horton*]; *Bankers Health & Life Ins. Co. v. Smith*, 188 S.E. 463 (Ga. App. 1936) [hereinafter *Bankers Health*]. Factually and causationally, this case is similar to ours.

The logic of the two state court cases is instructive. In *Horton*, the California Court of Appeals reasoned that death resulting from an illness may still constitute "external, violent, and accidental means" because "the disease is a mere link in the chain of causation between the accidental means and the death which it produces." 45 Cal. App. at 471. The California Court of Appeals goes on to say that if the "cause to which the disease can be traced was an 'accidental means,' then, not the disease, but the original accidental means will be deemed to be the true cause of the death." *Id.* Thus, the California Court of Appeals reasoned, with reference to the Kentucky Court of Appeals' opinion in *Omberg*, "that if inoculation with disease-producing germs is a part of the accident, the accident is, in law, the sole and proximate cause of the death, though blood poisoning ensue." *Id.* at 472.

In *Bankers Health*, the Georgia Court of Appeals gave the most detailed analysis and concluded that "[w]here a disease is the direct result of an accident, the death which results from the disease is the direct and proximate result of the accident." *Id.* at 464. It concluded so despite the fact that the insurance company argued that "the policy prevents a recovery where the death

8

is caused by, or is contributed to, either wholly or partially by disease." *Id.* The court reasoned that coverage should not be precluded simply because the person did not die instantly from the accident. *Id.* The court makes clear that the causal connection of an accident that directly causes the mortal disease maintains the causal chain in such a way as to maintain coverage under the policy, despite its exclusion for deaths resulting from disease. In so concluding, the Georgia Court of Appeals stated that a

> provision of the policy which denies liability where the accidental death of the insured "is caused or contributed to, directly or indirectly, or wholly or partially, by disease," must be construed as denying liability only where the disease proximately contributes to or causes the death. Liability is not denied under this clause of the policy where the accidental injury is the direct cause of the disease which afterwards caused the death. The intervention of the disease between the injury and the death, where the disease is directly caused by the injury, does not break the proximately causal connection between the injury and the death.

*Id.* at 464-65.[3]

Here, the Policy's language is strong, and a literal reading of the language could be read to exclude any disease process from coverage. However, such a reading could cause the exclusion to swallow the rule, rendering much of the accidental death coverage illusory. The Court finds logic in the analysis of the Kentucky, Georgia, and California Courts. Although the plain language of the exclusion could be read to preclude recovery for death resulting from

---

[3] The Georgia Court of Appeals found support for its logic in *Freeman v. Mercantile Mut. Accident Ass'n*. 30 N.E. 1013 (Mass. 1892). In *Freeman*, the Massachusetts Supreme Court confronted an accident insurance policy that excluded coverage if the "death or disability occurs in consequence of disease." *Id.* at 1013. The insurance company contended that it was not liable under the policy because the insured died of a disease. *Id.* The Massachusetts Supreme Court noted that excluding coverage where an accident directly caused a disease "would make the policy worthless to beneficiaries in many cases of death where an injury resulting from an accident was the efficient cause." *Id.* at 1014. It also noted that such an interpretation of the language was "in accordance with the apparent purpose and intention of the parties." *Id.* The Massachusetts' Supreme Court concluded that a death resulting from disease caused directly and solely by the accident would not be excluded by this policy. *Id.* It reached that conclusion by focusing on the meaning of "proximate" cause in the policy's language. *Id.*

disease, such a rigid and literal reading of the language leads to an overly broad application of the exclusion.  The connection between the disease and the accident can be so direct that the accident and the mortal disease are essentially intertwined.  Rastogi's mosquito bite and ensuing Chikungunya present such a situation.  The infected bite and the disease it produced operated as a unified single mechanism to produce Rastogi's death.  Consequently, at this time the Court is not convinced to dismiss the complaint based upon the disease exclusion of the Policy.

Although the proof is not fully developed here, it appears unlikely that Defendant can prove that Dr. Rastogi's death resulted from the arousal of a pre-existing condition.  Regardless, the Complaint certainly does not preclude judgment for Plaintiff.

For all these reasons and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that AMEX's motion to dismiss is DENIED.

cc:     Counsel of Record